

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-15-1994

# Bethenergy Mines v. Off. Wrkrs' Comp. Prog. et al.

Precedential or Non-Precedential:

Docket 94-3247

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Bethenergy Mines v. Off. Wrkrs' Comp. Prog. et al." (1994). *1994 Decisions.* Paper 187.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3247


BETHENERGY MINES INC.,

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, United States Department of Labor;
and EVA VROBEL, widow/John,

Respondents


On Petition for Review of an
Order of the Benefits Review Board
(BRB. No. 89-2387 BLA)


Submitted under Third Circuit LAR 34.1(a)
October 31, 1994

BEFORE: GREENBERG and MCKEE, Circuit Judges,
and POLLAK, District Judge*

(Filed: November 15, 1994)

John J. Bagnato
Spence, Custer, Saylor,
Wolfe & Rose
400 United States National
Bank Building
P.O. Box 280
Johnstown, PA 15907

Attorneys for Petitioner

Thomas S. Williamson, Jr.
Solicitor of Labor
Donald S. Shire
Associate Solicitor
Patricia M. Nece

* Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Gary K. Stearman
United States Department
of Labor
Office of the Solicitor
200 Constitution Ave., N.W.
Washington, D.C. 20210

Attorneys for Respondent
Director, Office of
Workers' Compensation
Programs

Robert J. Bilonick
Pawlowski, Tulowitzki,
Bilonick & Walter
603 North Julian Street
P.O. Box 658
Ebensburg, PA  15931

Attorneys for Respondent
Eva Vrobel

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The matter is before the court on a petition for review brought by BethEnergy Mines, Inc. arising from an application filed on March 9, 1978, by John Vrobel under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901 et seq.  The petition seeks review of an April 6, 1994 order of the Benefits Review Board ("the Board") denying BethEnergy's motion for

reconsideration of a Decision and Order of the Board dated December 29, 1992.  Vrobel was a coal miner who for approximately 34 years worked underground.  In large part Vrobel worked for BethEnergy which last employed him on or about September 26, 1977.  Vrobel died in 1985 and his widow, Eva Vrobel, has been substituted as a party in this case.  Thus, Eva Vrobel and the Director, Office of Workers' Compensation Programs ("Director"), are the respondents.

The Department of Labor initially awarded benefits to Vrobel but BethEnergy denied liability and accordingly the claim was submitted as a contested matter.  There was a formal hearing before an Administrative Law Judge ("ALJ") on December 18, 1986.  In February 1987, BethEnergy submitted a closing statement which contended that the evidence was insufficient to invoke the interim presumption of total disability provided in 20 C.F.R. § 727.203(a)(1).[1]  Alternatively, BethEnergy argued that even if

_____

[1].  The Department of Labor has promulgated regulations establishing an interim presumption of total disability, applicable in this case, providing that a person who worked at least 10 years as a coal miner is presumed to be totally disabled by pneumoconiosis and entitled to benefits under the Act if any of the following five requirements can be met: (1) an x-ray reading establishes the existence of pneumoconiosis; (2) ventilatory study measurements establish the presumption of a chronic respiratory or pulmonary disease as numerically defined; (3) blood gas studies reveal impairment of the flow of oxygen, again as defined numerically; (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment establishes the presence of a total impairment; or (5) where a miner is deceased and no medical evidence is available, an affidavit of the survivor of the miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.  20 C.F.R. § 727.203(a)(1) (1994).

the interim presumption was invoked, the evidence established that it had been rebutted.

In a decision issued on April 30, 1987, the ALJ found that Vrobel demonstrated that the interim presumption should be invoked under 20 C.F.R. §727.203(a)(1) on the basis of x-ray evidence establishing the existence of pneumoconiosis. The ALJ further found that BethEnergy failed to establish rebuttal of the presumption under 20 C.F.R. § 727.203 (b)(1), (b)(3) or (b)(4).[2]

(..continued)

> The party opposing entitlement may then rebut the interim presumption in four different ways. 20 C.F.R. § 727.203(b)(1)-(4). The two methods of rebuttal which are most relevant to this case are as follows:
>> (b) <u>Rebuttal of interim presumption</u>. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
>>> . . .
>>>
>>> (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable gainful work ...; or
>>> (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment.

[2]. In invoking the interim presumption based on the evidence of several positive x-ray readings, the ALJ applied a now-discredited theory which allowed invocation of the interim presumption to be based upon a single piece of qualifying evidence, with contrary evidence being weighed only on rebuttal. <u>Stapleton v. Westmoreland Coal Co.</u>, 785 F.2d 424 (4th Cir. 1986), <u>rev'd sub nom. Mullins Coal Co. v. Director, OWCP</u>, 484 U.S. 135, 108 S.Ct. 427 (1987). The Supreme Court in <u>Mullins</u> rejected this theory which we had followed in <u>Revak v. National Mines Corp.</u>, 808 F.2d 996 (3d Cir. 1986), as the Court held that all relevant evidence, including conflicting evidence, must be weighed when

However, the ALJ found that BethEnergy could establish rebuttal under (b)(2) because from a pulmonary standpoint Vrobel could perform his usual coal mine employment or comparable gainful work. In addition, the ALJ determined that an opinion of a Dr. McQuillan that Vrobel did not have a totally disabling respiratory impairment was supported by the opinions of two other doctors who examined Vrobel. App. at 152. As a result, the ALJ denied Vrobel benefits.

Eva Vrobel then appealed to the Board, arguing that Vrobel's pulmonary impairment prevented him from working and, accordingly, the ALJ erroneously had found that BethEnergy established (b)(2) rebuttal. In its answering brief BethEnergy argued that even if the Board found that in view of Kertesz v. Crescent Hills Coal Co., 788 F.2d 158 (3d Cir. 1986), the ALJ's initial finding of rebuttal was inappropriate, the evidence nevertheless demonstrated that Vrobel's disability was unrelated to coal mine employment, thereby establishing (b)(3) rebuttal. App. at 122-23. Kertesz held that the causation of a miner's total disability is not relevant in determining whether there was rebuttal under (b)(2). Id. at 162 n.5. Instead, a finding of any totally disabling contention will preclude (b)(2) rebuttal.

(..continued)
deciding to invoke the presumption in the first place. Mullins, 484 U.S. at 148-150, 108 S.Ct. at 433-36. The ALJ later refused a request by BethEnergy to reexamine the invocation of the (a)(1) presumption under the post-Mullins standard. Nevertheless, we need not address this issue because BethEnergy does not challenge the ALJ's refusal in this appeal.

As BethEnergy anticipated, the Board remanded the case on December 30, 1988, for the ALJ to reconsider rebuttal under (b)(2) pursuant to Kertesz, and it also instructed the ALJ to reconsider rebuttal under (b)(3) pursuant to Bernardo v. Director, OWCP, 790 F.2d 351 (3d Cir. 1986). App. at 113. In Bernardo, we determined that rebuttal under (b)(3) solely relates to the source of the miner's total disability, and not the degree of disability. Thus, the pneumoconiosis need not be the exclusive source of the disability.

On March 13, 1989, the ALJ in his Decision and Order on Remand awarded benefits to Vrobel. App. at 108. The ALJ found that BethEnergy failed to establish rebuttal under (b)(2) as Vrobel had a shoulder condition that could have been totally disabling. App. at 108. In addition, the ALJ determined that BethEnergy failed to establish (b)(3) rebuttal because the medical evidence in the record supported a finding that Vrobel's total disability at least partly was associated with his coal mine employment. Consequently, BethEnergy failed to establish that there was no significant relationship between the total disability and coal mine employment. App. at 109.

On April 11, 1989, BethEnergy filed a motion for reconsideration, arguing that the ALJ's finding in the initial Decision and Order under (b)(2), i.e. that Vrobel was not totally disabled due to a respiratory or pulmonary impairment, was sufficient to establish rebuttal under (b)(3).[3] BethEnergy

_____

[3]. In other words, BethEnergy claimed that inasmuch as the ALJ initially found that Vrobel's total disability was unrelated to a

further asserted that (b)(2) rebuttal was satisfied because the evidence had failed to establish that Vrobel was totally disabled as a result of any condition.  App. at 74.  In addition, BethEnergy alleged for the first time that changes in the interpretation of (b)(2) and (b)(3) had affected adversely its defense of the claim and it requested an opportunity to submit additional evidence.[4]  App. at 68.  On reconsideration, in a Decision and Order of July 5, 1989, the ALJ rejected BethEnergy's argument concerning total disability under (b)(2) and reiterated that BethEnergy failed to establish that Vrobel was not totally disabled from any condition.  However, the ALJ determined that (b)(3) rebuttal was established.  In reaching this conclusion, the ALJ applied Marcum v. Director, OWCP, 11 Black Lung Rep. (MB)

(..continued)
respiratory or pulmonary impairment, (b)(3) rebuttal could be established because the absence of any significant pulmonary or respiratory impairment precludes pneumoconiosis as a cause of total disability.  App. at 75.  Thus, in BethEnergy's view, there was no significant relationship between the total disability and coal mine employment.

[4].    In particular, BethEnergy asserts that Kertesz, which we decided on April 14, 1986, changed the legal standard for establishing rebuttal under (b)(2).  BethEnergy argues that it developed its medical evidence according to the pre-Kertesz standards, which required a showing that the claimant left work because of a respiratory related problem.  As such, BethEnergy claims that it was unnecessary to develop further evidence regarding (b)(3) rebuttal because "the pre-Kertesz rule obviated the need to prove that disabling conditions that were not respiratory in origin did not 'arise in whole or part out of coal mine employment.'" (Quoting (b)(3)).  Brief at 14.  Since BethEnergy apparently had developed evidence tending to illustrate that Vrobel's total disability was non-respiratory in nature, it argues that it should be permitted to develop additional evidence addressing the post-Kertesz standards affecting (b)(2) and (b)(3) rebuttal.

1-23 (1987). Construing Marcum, the ALJ stated that (b)(3) rebuttal could be invoked "if the weight of the evidence establishes that the Claimant did not have a totally disabling pulmonary or respiratory impairment."[5] App. at 58. The ALJ then adopted his finding in the initial decision that there was no medical evidence which established a totally disabling respiratory impairment. App. at 58. Consequently the ALJ determined that application of the Marcum standard precluded a recovery of benefits.

Vrobel appealed to the Board, claiming that the ALJ's finding that BethEnergy established (b)(3) rebuttal was erroneous because he incorrectly applied the (b)(3) rebuttal standard. Vrobel further argued that proper application of Bernardo would illustrate that BethEnergy could not establish (b)(3) rebuttal, just as the ALJ previously determined when he applied the correct standard in the Decision and Order on remand. On April 11, 1990, BethEnergy responded, asserting that the ALJ's (b)(3) rebuttal finding on reconsideration was correct because the physicians' opinions contained in the record ruled out any relationship between coal dust exposure and disability, thereby addressing the source of the miner's disability. App. at 45-47.

---

[5]. This standard is incorrect as Bernardo v. Director, OWCP, 790 F.2d at 353, set forth the controlling law with respect to (b)(3) rebuttal at the time the ALJ decided this case. Bernardo establishes that (b)(3) is concerned with the source of disability and not the degree. Id. In other words, Bernardo requires an inquiry into the causation of the disability. It should be noted, however, that the ALJ properly cited and applied Bernardo in his Decision and Order on Remand in which he awarded benefits to Vrobel. App. at 113.

On December 29, 1992, the Board determined that the ALJ applied the wrong standard when he concluded that rebuttal was established under (b)(3). The Board reasoned that inasmuch as the ALJ found that Vrobel had a respiratory impairment arising out of coal mine employment, app. at 109, 153, the issue to decide, in accordance with Carozza v. United States Steel Corp., 727 F.2d 74, 78 (3d Cir. 1984), was whether this respiratory impairment was a contributing cause of the miner's total disability or whether it aggravated his total disability.[6] App. at 37. As we explained in Kline v. Director, OWCP, 877 F.2d 1175, 1179 (3d Cir. 1989), for rebuttal under (b)(3) "it is necessary to 'rule out' a possible causal connection between a miner's disability and his coal mine employment."

The Board then stated that the ALJ properly had considered (b)(3) rebuttal in his initial Decision and Order on Remand, in which he awarded benefits. The Board indicated that in the ALJ's decision on reconsideration he had applied the wrong test when he held that (b)(3) rebuttal was established since Vrobel did not have a totally disabling pulmonary or respiratory impairment. Furthermore, the Board noted that the ALJ credited the medical opinions that Vrobel had a pulmonary impairment arising out of his coal mine employment, thereby justifying a determination that BethEnergy failed to show that there was "no

---

[6]. As we discussed earlier, Bernardo requires an inquiry into the source of the miner's total disability. See note 5, supra. Carozza, in combination with Bernardo, requires that a party opposing entitlement must demonstrate that pneumoconiosis is not a contributing or aggravating cause of the disability.

significant relationship" between disability and coal mine employment.  Id. at 37.  The Board also concluded that because BethEnergy failed to meet the "no significant relationship" test, which it regarded as less stringent and more easily met than the Carozza no "contribution standard," the ALJ's initial finding precluded rebuttal under Carozza.  Therefore, the Board reversed the ALJ's finding of (b)(3) rebuttal and awarded benefits.

On January 25, 1993, BethEnergy requested that the Board reconsider its award of benefits to Vrobel.  It premised this request on two arguments: (1) due process and fundamental fairness require that BethEnergy be given an opportunity to develop new evidence to address the standard for establishing (b)(2) and (b)(3) rebuttal, which allegedly changed during the litigation of Vrobel's claim; and (2) the Supreme Court's decision in Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 108 S.Ct. 427 (1987), concerning the invocation of the interim presumption of total disability under C.F.R. § 727.203(a)(1) warranted reconsideration by the ALJ.  App. at 31–32.  The Board denied BethEnergy's motion on April 6, 1994.  App. at 25.

On this petition, BethEnergy challenges the Board's denial of its motion for reconsideration.  In particular, BethEnergy asserts that it never has been granted an opportunity to have the medical evidence which it has developed interpreted to satisfy the proper burdens for establishing rebuttal under (b)(2) and (b)(3).

## II.  DISCUSSION

## A. The Standard of Review

We review the decisions of the Board for errors of law and to assure that it has adhered to its own standard of review. *Director, OWCP v. Barnes and Tucker Co.*, 969 F.2d 1524, 1526-27 (3d Cir. 1992). Thus, our inquiry is limited to a determination of whether the Board acted in conformity with applicable law and within its proper scope of review. *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d at 162-63. Our review of the Board's legal determinations is plenary. *Barnes and Tucker Co.*, 969 F.2d at 1526-27; *Carozza v. United States Steel Corp.*, 727 F.2d at 77. Of course, the Board must accept an ALJ's findings of fact if they are supported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3); *Oravitz v. Director, OWCP*, 843 F.2d 738, 739 (3d Cir. 1988).

## B. BethEnergy's Claims

BethEnergy argues that it is entitled to a new hearing to respond to a change in the law that invalidated its rebuttal proof. It bases this assertion on two arguments. First, it claims that the Board violated its statutory authority by engaging in *de novo* fact finding. Second, it asserts that its due process rights were violated when the Board refused to reopen the record to afford it an opportunity to develop evidence to address new standards of proof regarding rebuttal under (b)(2) and (b)(3). Both arguments lack merit.

## 1. De Novo Fact Finding

BethEnergy asserts that the Board overstepped its statutory authority by making factual findings regarding (b)(2)

and (b)(3) rebuttal. In particular, it claims that because the ALJ found that Vrobel retained the pulmonary capacity to perform his usual coal mine work or comparable and gainful work, it had established (b)(2) rebuttal. Brief at 12. It then asserts that the Board engaged in fact finding in rejecting (b)(2) rebuttal. We reject this argument as it has no factual or legal support in the record.

As the Director points out, the ALJ found that BethEnergy established (b)(2) rebuttal only in his initial Decision and Order. However, as the Director also notes, he reached this conclusion by applying the wrong rebuttal standard. After the Board remanded the case with instructions to apply the proper (b)(2) rebuttal standard in accordance with Kertesz, the ALJ specifically found that (b)(2) rebuttal was not established. App. at 58, 108. Furthermore, the Board never upset the finding by the ALJ concerning BethEnergy's lack of proof to establish (b)(2) rebuttal under the proper standard.

BethEnergy also claims that the Board engaged in de novo fact finding when it reversed the ALJ's finding that BethEnergy established (b)(3) rebuttal. The argument is that once the Board determined that the ALJ applied the wrong standard on reconsideration the Board should have remanded the case to the ALJ with instructions to review the evidence under the correct standard. BethEnergy claims that the Board instead weighed the evidence de novo, and concluded that BethEnergy did not establish rebuttal under the post-Kertesz standards. In BethEnergy's view,

these actions were beyond the Board's statutory powers, and, as such, warrant a remand of the case.

The Director argues that the Board did not engage in de novo fact finding, but only reinstated the ALJ's initial findings made on remand. In particular, the Director claims that (b)(3) rebuttal was precluded because BethEnergy failed to establish that there was no significant relationship between the total disability and Vrobel's coal mine employment. App. at 109.

In view of the parties' contentions we consider whether the Board engaged in de novo fact finding when it reversed the ALJ's decision regarding (b)(3) rebuttal. The Board's power to hear disputes concerning claims under the Black Lung Benefits Act is derived from 33 U.S.C. § 921(b)(3), which provides:

> The Board shall be authorized to hear and
> determine appeals raising a substantial
> question of law or fact taken by any party in
> interest from decisions with respect to
> claims of employees under this chapter and
> the extensions thereof. (Emphasis supplied.)

The statutory language has been interpreted to prohibit the Board from making a de novo factual review, Oravitz v. Director, OWCP, 738 F.2d at 739, instead requiring it to accept an ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence in the record. King v. Director, OWCP, 904 F.2d 17, 18 (9th Cir. 1990); Rochester & Pittsburgh Coal Co. v. Krecota, 868 F.2d 600, 603 (3d Cir. 1989). See also 20 C.F.R § 802.301.

The proper (b)(3) rebuttal standard requires that the party opposing entitlement demonstrate that the miner's respiratory impairment was not a contributing cause of his total disability or did not aggravate his total disability. Carozza, 727 F.2d at 78. The Board determined that BethEnergy did not meet this standard.

In reversing the ALJ, the Board acted within the scope of its delegated powers to make legal determinations because the decision of the ALJ on reconsideration on remand that BethEnergy established (b)(3) rebuttal as Vrobel did not have a totally disabling pulmonary or respiratory impairment was clearly contrary to law. BethEnergy argues that the case should have been remanded to the ALJ for a proper application of the Carozza standard. While the Board could have remanded the matter, we hardly can fault it for bringing these protracted proceedings to a close. Indeed, we followed a similar course in Sulyma v. Director, OWCP, 827 F.2d 922, 924 (3d Cir. 1987). In that case the Director conceded on appeal in this court that the claimant was entitled to the interim presumption of total disability denied in the administrative proceedings. However, the Director sought a remand of the case for consideration of whether the presumption had been rebutted. But we would not remand the case. Rather, "in consideration of the age of" the case, we relied on our own view of the record and concluded that the presumption had not been rebutted. Here, the Board took even less intrusive action as, rather than drawing factual conclusions, it accepted

and applied the ALJ's previous factual finding, made under the correct legal standard.

When the Board reversed the ALJ's determination that (b)(3) rebuttal had been established, it recognized that BethEnergy could not satisfy the Carozza requirement for (b)(3) rebuttal. It based this conclusion on the reasoning that because the ALJ determined that BethEnergy could not establish that there was "no significant relationship" between Vrobel's total disability and his coal mine employment, BethEnergy could not establish that the miner's pneumoconiosis was not a "contributing cause" of disability. App. at 37. We regard the Board's conclusion as logically unassailable. Indeed, the Board believed that it is easier to establish that there is no significant relationship between the total disability and the employment than it is to establish that pneumoconisis is not a contributing cause to the disability.

We acknowledge that evaluation of medical evidence is entrusted to the ALJ. As we noted in Caprini v. Director, OWCP, 824 F.2d 283, 285 (3d Cir. 1987):

> [t]he ALJ should first have the opportunity
> to consider the evidence, make his ruling,
> and state his reasons. The Board may then
> consider the matter if the aggrieved party
> wishes to appeal.

But the proceeding in this case fully comported with Caprini as the ALJ made the critical factual determinations on the basis of the record. Thus, a remand was not necessary as ". . . the record [was] so clear that under the correct standard the result

[was] foreordained."  Id.  See also Drummond Coal Co. v. Freeman, 17 F.3d 361 (11th Cir. 1994) (court of appeals may reinstate findings of ALJ overturned by Board); Sykes v. Director, OWCP, 812 F.2d 890 (4th Cir. 1987) (same).  In order to justify a remand the Board would had to have concluded that the ALJ might deviate from his prior finding.  The Board had no reason to reach such a conclusion.

### 2.  The Due Process Argument

BethEnergy asserts that due process of law requires that it be afforded an opportunity to develop evidence to address new standards of proof regarding rebuttal under (b)(2) and (b)(3).  In this regard BethEnergy claims that our opinion in Kertesz on April 14, 1986, effectively changed the legal standard for establishing rebuttal under (b)(2) but that BethEnergy developed its medical evidence in 1983.

We see no need for an extended discussion on this point as BethEnergy clearly had an opportunity to develop evidence under the Kertesz standard for we decided that case on April 14, 1986, and the initial hearing before the ALJ in this matter was on December 18, 1986.  Furthermore, BethEnergy could have sought even more time under 20 C.F.R. § 725.454 to prepare its case but it did not do so.  In these circumstances BethEnergy's due process argument is insubstantial.

In reaching this conclusion we have not overlooked Marx v. Director, OWCP, 870 F.2d 114 (3d Cir. 1989), on which BethEnergy relies.  But Marx is not helpful to BethEnergy.  That case involved a situation in which a party presented her case in

conformity with practice existing at the time of the hearing. However, following the hearing there was a change in the applicable law.  In those circumstances we held that the claimant was entitled to a remand to "have the opportunity to introduce evidence which satisfies [the new] standard."  Thus, Marx does not support an argument that a litigant should be entitled to a remand to meet standards established before a hearing.

## III.  CONCLUSION

For the aforementioned reasons, the petition for review is denied.