**CARPENTERTOWN COAL AND COKE CO., INC.; Birmingham Fire Insurance Co./Broadspire, Petitioners**

v.

**DIRECTOR OWCP, United States Department of Labor; Patrick Jenkins, Respondents.**

No. 14–1371.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 28, 2014.

Opinion Filed: Jan. 7, 2015.

Christopher L. Wildfire, Esq., Margolis Edelstein, Pittsburgh, PA, Dianna Cannon, Esq., Salt Lake City, UT, for Petitioners.

Sean Bajkowski, Esq., United States Department of Labor, Barry H. Joyner, Esq., United States Department of Labor

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1. Under the Act, black lung benefits are provided "for or on behalf of miners who are totally disabled due to pneumoconiosis." 20 C.F.R. § 718.204(a). "[P]neumoconiosis means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." *Id.* § 718.201(a).

Office of the Solicitor, Washington, DC, for Respondents.

Before: McKEE, Chief Judge, GREENAWAY, JR., and KRAUSE, Circuit Judges.

## OPINION *

GREENAWAY, JR., Circuit Judge.

Carpentertown Coal and Coke Company ("Carpentertown") and Birmingham Fire Insurance Company/Broadspire, Carpentertown's insurance carrier (collectively, "Petitioners"), petition for review of a decision and order of the Benefits Review Board (the "Board") granting retired coal miner Patrick Jenkins ("Respondent" or "Jenkins") benefits under the Black Lung Benefits Act (the "Act"). 30 U.S.C. § 901 *et seq.*[1] We will deny the petition for review.

### I. Background

Jenkins was employed intermittently as a coal miner between 1969 and 1987. Based on Jenkins's employment history, Administrative Law Judge Jennifer Gee (the "ALJ") concluded that Jenkins had 10.75 years of coal mine employment. His last position was with Carpentertown.[2] Jenkins was a heavy smoker; the ALJ found that Jenkins had nearly a 43 "pack-year" smoking history ending around 2000 or 2001.[3]

2. As the last operator to employ Jenkins, Carpentertown is the responsible operator under the Act. *See* 20 C.F.R. § 725.495(a)(1) (defining a "responsible operator" as "the potentially liable operator ... that most recently employed the miner.").

3. "Pack-year" refers to the number of years during which an individual has smoked a pack of cigarettes per day. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 137 n. 7 (3d Cir.1998). "For example, a person who

Jenkins applied for black lung benefits from Carpentertown. In support of his claim, he provided the medical opinions of Drs. Mark Shockey and Shane Gagon.[4] The ALJ granted Jenkins's benefits claim under the Act, crediting Dr. Gagon's opinion that Jenkins's chronic obstructive pulmonary disease ("COPD") was due to both smoking and coal-mine dust.

Carpentertown appealed to the Board, which affirmed in part and vacated in part. The Board affirmed the ALJ's finding that Jenkins worked as a coal miner for 10.75 years. However, the Board concluded that the ALJ failed to address all relevant evidence in determining the extent of Jenkins's smoking history. The Board vacated the ALJ's finding on that point. The Board also found that the ALJ failed to address aspects of Dr. Gagon's treatment records regarding the etiology of Jenkins's COPD. As a result, the Board also vacated the ALJ's finding on both legal pneumoconiosis and disability causation. On remand, the ALJ again awarded benefits.

In her second decision, the ALJ re-analyzed the medical opinions of Drs. Shockey, Gagon, Robert J. Farney, and George B. Goodman.[5] Drs. Shockey and Gagon concluded that Jenkins suffered from pneumoconiosis, and that his respiratory condition was caused in part by his exposure to coal dust, which in turn was a substantial cause of his total disability. Drs. Farney and Goodman, on the other hand, concluded that Jenkins did not suffer from pneumoconiosis, and that his total disability was caused by smoking. The ALJ credited the opinion of Dr. Shockey, as supported by the opinion of Dr. Gagon, as sufficiently reasoned and documented to support a finding of the existence of legal pneumoconiosis. Accordingly, the ALJ found that "the evidence establishes the presence of legal pneumoconiosis ... and [Jenkins] is totally disabled due to pneumoconiosis...." App. 67.

Although Petitioners appealed to the Board, the Board affirmed the ALJ's award of benefits. This timely petition for review followed.[6] Now, Petitioners primarily contend that the Board erred in awarding benefits to Jenkins because the ALJ's decision was not based on substantial evidence, and improperly rejected the etiologic findings of Drs. Farney and Goodman. To determine whether the Board committed reversible error, "we must independently review the record 'and decide whether the ALJ's findings are supported by substantial evidence.'" *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir.1986) (quoting *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172 (3d Cir.1981)).[7]

---

smokes one pack a day for 10 years has a 10 pack-year history." *Id.*

4. Dr. Shockey, who is Board-certified in Internal Medicine and Pulmonary Disease, opined that chronic bronchitis (based on Jenkins's smoking history) caused 75% of Respondent's impairment, and that coal workers' pneumoconiosis ("CWP") caused 25% of his impairment. Dr. Gagon, who is Board-certified in Family Medicine, opined that Jenkins's lung disease was 75% caused by smoking and 25% caused by coal dust.

5. Dr. Farney, a Board-certified Pulmonologist, examined and tested Jenkins on behalf of Carpentertown. Dr. Goodman, also a Board-certified Pulmonologist, reviewed Jenkins's medical records on behalf of Carpentertown.

6. "We have jurisdiction over the [Boards]'s final order pursuant to 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a)." *Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 310 (3d Cir.1995).

7. The determinations of the Board are reviewed only "for errors of law and to assure that it has adhered to its scope of review." *BethEnergy Mines, Inc. v. Dir., OWCP*, 39 F.3d 458, 462–63 (3d Cir.1994). The decision of the administrative law judge must be affirmed

## II. Analysis

█ Petitioners argue that the ALJ's reliance on the causal opinions of Dr. Shockey and Dr. Gagon was irrational and not based upon substantial evidence.[8] Specifically, Petitioners contend that the ALJ erred in finding that Dr. Shockey's opinion was documented and reasoned, when she discounted his opinion in her first decision. However, the Board's instructions to the ALJ on remand were to *reconsider* the documentation and reasoning of the medical opinions. The ALJ complied with the Board's instructions on remand and reevaluated each physician's opinion, applying the same standard to each. The ALJ's reevaluation considered the respective credentials of each physician, the substance of their opinion, the support for that opinion, and whether it was consistent with the regulatory regime. We find no substance to Petitioners' claims of error.[9]

The ALJ's findings that Jenkins has legal pneumoconiosis and that he is totally disabled due to pneumoconiosis are supported by substantial evidence. Dr. Shockey's opinion, supported by Dr. Gagon's opinion, was based on his consideration of Jenkins's coal mine employment history, his smoking history, and physical examination findings. Dr. Shockey specified that his diagnosis of CWP was based, in part, on claimant's pulmonary function study, which indicated severe obstruction, and his chest x-ray, which indicated both COPD and CWP. The ALJ found that this record established the existence of pneumoconiosis. Because there was "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion," the award of benefits to Jenkins was justified and the Board did not err in affirming it. *Consolidation Coal Co. v. Kramer*, 305 F.3d 203, 207 (3d Cir.2002).

Petitioners also argue that the opinions of Drs. Farney and Goodman should have been credited, and that the ALJ improperly considered the Department of Labor's Preamble to the Regulations to the Act ("Preamble"), 65 Fed.Reg. 79920 (Dec. 20, 2000), "as guidance in evaluating and assessing the probative weight to be assigned to the medical opinion evi-

by the Board if it is supported by substantial evidence and is in accordance with the law. *See* 33 U.S.C. § 921(b)(3); *Oravitz v. Dir., OWCP*, 843 F.2d 738, 739 (3d Cir.1988). Appellate review thus necessarily entails an independent review of the record and a decision as to whether the administrative law judge's findings were supported by substantial evidence. *Walker*, 645 F.2d at 172. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Kertesz*, 788 F.2d at 163.

8. Petitioners also argue that the ALJ's determination of Jenkins's smoking history was not based on substantial evidence and improperly influenced her assessment of the physicians' causal opinions. The ALJ found that Jenkins had a smoking history of 42.94 pack-years. The ALJ based her finding, in large part, on

Jenkins's testimonial recitation of his smoking history. The ALJ found that Jenkins testified to a significantly variable smoking history over time, lending credibility to his account. The ALJ noted that none of the physicians' reports captured the detailed smoking history presented by Jenkins at the hearing. Accordingly, we find that the ALJ's determination of Jenkins's smoking history was supported by substantial evidence and the Board did not err in affirming it.

9. Petitioners also argue that the ALJ erred by relying on Dr. Gagon's opinion. The ALJ, however, discounted Dr. Gagon's opinion and chose to rely primarily on the opinion of Dr. Shockey. Because the ALJ accorded only limited weight to Dr. Gagon's opinion, and the ALJ's decision was supported by substantial evidence, we do not address Petitioners' additional arguments challenging Dr. Gagon's opinion.

dence...." Pet. at 45.[10] Petitioners' arguments ignore that the ALJ did more on remand than just consider the Preamble.

 The ALJ rejected the opinions of Drs. Farney and Goodman for several reasons unrelated to the Preamble. First, the ALJ determined that both opinions were undermined because they each had indicated that positive x-ray evidence was required to attribute Jenkins's COPD to coal-mine dust exposure. This position stands in contravention to the Act. *See* 20 C.F.R. § 718.202(a)(4) (noting that the "determination of the existence of pneumoconiosis may also be made" by a physician "exercising sound medical judgment, notwithstanding a negative X-ray"). Second, the ALJ also gave less weight to the opinions of Drs. Farney and Goodman because each doctor failed to explain convincingly why Jenkins's COPD was not "significantly related to, or substantially aggravated by, dust exposure...." *Id.* § 718.201(b).[11]

Having determined that substantial evidence supports the decision of the ALJ, we also conclude that the Board properly applied its scope of review, and did not err by affirming the ALJ's award of black lung benefits to Jenkins.

10. The Preamble explains that the 2001 amendments were intended to "conform [the regulatory definition of pneumoconiosis] to the statute," which defines pneumoconiosis broadly. 65 Fed.Reg. at 79937. The Preamble addressed several studies that "contain overwhelming scientific and medical evidence demonstrating that coal mine dust exposure can cause obstructive lung disease." *Id.* at 79944; *see also id.* at 79941–44.

11. Even assuming arguendo that the ALJ considered the Preamble when evaluating the medical opinion evidence, an ALJ's reliance on the Preamble has been explicitly endorsed by various courts of appeal. *See Helen Mining Co. v. Dir., OWCP,* 650 F.3d 248, 257 (3d Cir.2011) (stating that "[t]he ALJ's reference

### III. Conclusion

For the foregoing reasons, we will deny the petition for review.

to the preamble ... unquestionably supports the reasonableness of his decision to assign less weight" to a medical expert's opinion); *Peabody Coal Co. v. Dir., OWCP,* 746 F.3d 1119, 1125 (9th Cir.2014) (finding that the Preamble may be used to give an ALJ understanding of a scientific or medical issue); *Harman Mining Co. v. Dir., OWCP,* 678 F.3d 305, 314–15 (4th Cir.2012) (concluding that "the ALJ was entitled to" look to the Preamble to assess a medical expert's credibility); *Consolidation Coal Co. v. Dir., OWCP,* 521 F.3d 723, 726 (7th Cir.2008) (describing as "sensible" an ALJ's decision to discredit a medical expert's opinion that was inconsistent with the Preamble).